**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**CASE NO. _____**

JIFFY LUBE INTERNATIONAL, INC.
and PENNZOIL-QUAKER STATE
COMPANY,

      Plaintiffs,

v.

SEBRING INVESTMENT LLC,
AMERICA'S AUTO SPA SEBRING
LLC, ZIA KHAN, and ZUBIN KHAN,

      Defendants.

_____/

**COMPLAINT FOR TRADEMARK INFRINGEMENT,**
**COUNTERFEITING, DILUTION, UNFAIR COMPETITION,**
**FALSE ADVERTISING, AND UNJUST ENRICHMENT**

      Jiffy Lube International, Inc. and Pennzoil-Quaker State Company (collectively, "Plaintiffs"), appearing through the undersigned counsel, allege as follows based on knowledge, information and belief:

**PARTIES**

      1.     Jiffy Lube International, Inc. ("JLI") is a Delaware corporation with its principal place of business at 150 N. Dairy Ashford, Houston, Texas 77079.  JLI is a wholly owned, direct subsidiary of the Pennzoil-Quaker State Company, and an indirect subsidiary of Shell USA, Inc.

      2.     Pennzoil-Quaker State Company D/B/A Shell Oil Products US is a Delaware corporation with its principal place of business at 150 N. Dairy Ashford, Houston, Texas 77079. Pennzoil-Quaker State Company is a wholly owned subsidiary of Shell USA, Inc.

3.      Defendant Sebring Investment LLC ("Sebring") is a Florida limited liability company with an address of 2192 Parker Drive Mississauga, Ontario, Canada L5B1W2 that owns the real property located at 991 U.S. HWY 27 N, Sebring, Florida 33870.

4.      Defendant America's Auto Spa Sebring LLC ("AASS") is a Florida limited liability company having a registered address of 991 U.S. HWY 27 N, Sebring, Florida 33870 that operates the oil change facility and business located at this address (the "Infringing Service Center").

5.      On information and belief, Defendant Zubin Khan is a Canadian individual who may reside in this District and who actively participates in the operation of the Infringing Service Center.

6.      On information and belief, Defendant Zia Khan is a Canadian individual who may reside in this District and who actively participates in the operation of the Infringing Service Center.

## NATURE OF ACTION AND JURISDICTION

7.      This is an action for trademark infringement, dilution, unfair competition, false advertising, deceptive trade practices and unjust enrichment under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"), and Florida state law.

8.      This Court has jurisdiction over this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Title 28 of the United States Code, §§ 1331 and 1338, and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a).

## FACTS

**A.      JIFFY LUBE INTERNATIONAL AND ITS MARKS**

9.      JLI is a franchisor of quick oil change and light automotive repair services in the United States.

10.     JLI owns the famous JIFFY LUBE brand and its franchise network is a leading provider of automotive specialty services, including vehicle lubrication, car maintenance, vehicle inspection services, and various other automotive services.

11.     JLI's franchisees operate over 2,000 JIFFY LUBE-branded automotive specialty shops located across the country, including many in Florida.

12.     Since at least as early as 1973, JLI has used the mark JIFFY LUBE in connection with providing vehicle lubrication services and has continuously offered these services and other automotive specialty services under the JIFFY LUBE mark since then.

13.     Since at least as early as 1983, JLI has used the JIFFY LUBE logo below featuring a stylized letter "J" with an arrow wrapping across and to the right, with the words "JIFFY LUBE" printed in the center:



14.     Since at least as early as 2010, JLI has used a slight variation of the stylized "J" logo, shown below:



15.     Over the years, JLI has consistently used, and has required its franchisees to use, the color "Jiffy Lube Red" (Pantone 202) on all service centers, signage, trade dress, and other advertising and promotional materials for its JIFFY LUBE services.  In addition to Jiffy Lube Red, JLI service centers and advertising materials also feature Pantone Cool Gray 10 and Pantone 116 (yellow) in the primary color configuration, and the colors orange, blue, gray, and beige as the secondary color scheme.

16.     As a result of its continuous usage of the JIFFY LUBE mark, logos, and trade dress, JLI has acquired common law trademark rights in these marks.

17.     In addition to its extensive common-law rights, JLI owns federal trademark registrations for its marks, including those shown in the chart below:

| MARK | REG. NO. / REG. DATE | GOODS/SERVICES |
|---|---|---|
| JIFFY LUBE | 1,384,672 Feb. 25, 1986 | Vehicle lubricating services (IC 37) |
| JIFFY LUBE | 4,450,078 Dec. 17, 2013 | Environmental automobile emission testing and inspection services (IC 42) |
| JIFFY LUBE | 4,450,079; Dec. 17, 2013 | Vehicle preventative maintenance services, namely, vulcanization of automobile tires, tire installation, rotation and balancing; Vehicle maintenance services, namely, battery installation, battery terminal cleaning, battery terminal replacement, diagnostic and cable end replacement and light bulb replacement (IC 37) |
|  | 1,326,317 Mar. 19, 1985 | Vehicle Preventive Maintenance Services-Namely, Lubricating Chassis; Changing Motor Oil; Changing Oil and Air Filters; Refilling Transmission, Differential, Brake, Power Steering, Radiator, Windshield Washer and Battery Reservoirs to Proper Fluid Levels; Changing Windshield Wiper Blades; |

| MARK | REG. NO. / REG. DATE | GOODS/SERVICES |
|---|---|---|
|  |  | Inflating Tires to Proper Pressure; Vacuuming Interiors; and Washing Windows (IC 37) |
| jiffy lube | 4,450,077 Dec. 17, 2013 | Vehicle preventative maintenance services, namely, sale of automobile tires, tire installation, rotation and balancing; Vehicle maintenance services, namely, battery installation, battery terminal cleaning, battery terminal replacement, diagnostic and cable end replacement and light bulb replacement (IC 37) |
| jiffy lube | 3,888,049 Dec. 07, 2010 | Printed materials in the field of vehicle maintenance, namely, vehicle maintenance, schedules, brochures and instructional materials (IC 16) Clothing, namely, shirts, hats and jackets (IC 25) Vehicle preventative maintenance services, namely, lubricating chassis; changing motor oil; changing oil and air filters; refilling transmission, differential, brake, power steering, radiator, windshield washer and battery reservoirs to proper fluid levels; changing windshield wiper blades; inflating tires to proper pressure; vacuuming interiors; and washing windows (IC 37) |

18.     These registrations are valid, enforceable, subsisting, and incontestable under 15 U.S.C. § 1065.  Copies of the certificates of registration for the above registrations are attached as EXHIBIT A.  The JIFFY LUBE marks and logos and the trade dress described above are collectively referred to herein as the "JIFFY LUBE Marks."

19.     JLI's prospective franchisees are screened and evaluated in accordance with JLI's franchisee criteria and minimum operating requirements, and franchisees are required to comply with JLI's quality control requirements and protocols in the provision of services and handling of

products.  JLI has established these protocols and requirements to ensure that customers receive consistent high-quality services and the vehicle lubricant products that JLI has selected.

20.     If selected to participate in the Jiffy Lube franchise, JLI's franchisees must sign a franchise agreement agreeing to comply with JLI's Policies and Procedures Manual and Systems Manual, among various other requirements.  JLI'S franchise agreement also requires franchisees to comply with the terms of the trademark license that JLI grants to its franchisees to make use of the JIFFY LUBE Marks in connection with operating their service centers.

21.     As part of JLI's policies and procedures, Jiffy Lube franchisees are required to use the Pennzoil brand of lubricants at their service centers for nearly all of their lubricant requirements and to use JLI's POS system for processing transactions.

22.     JLI also loans signage with the JIFFY LUBE Marks to the operators of authorized franchise service centers for the purpose of communicating to the public that they are authorized oil-change centers affiliated with JLI and the JIFFY LUBE brand.

23.     Over the years, JLI has invested great effort and resources in advertising and promoting the JIFFY LUBE Marks throughout the United States, including the state of Florida.

24.     The JIFFY LUBE Marks are inherently distinctive, serving to identify and indicate the source and quality of JLI's services to the consuming public, and to distinguish its services from those of other service providers.

25.     JLI has acquired valuable common law trademark rights and goodwill in the JIFFY LUBE Marks across the U.S.  and in Florida.

26.     Moreover, as a result of JLI's extensive use and promotion of the JIFFY LUBE Marks, the JIFFY LUBE Marks have become distinctive and famous to designate JLI, and are well known and widely recognized by consumers.

**B.      PENNZOIL-QUAKER STATE COMPANY AND ITS MARKS**

27.      Pennzoil-Quaker State Company D/B/A Shell Oil Products US is a subsidiary of Shell USA, Inc.

28.      Pennzoil-Quaker State Company, along with its predecessors and affiliates (collectively, "SOPUS"), has been a leading source of automotive lubricants and related products and services for many years starting at least as early as 1915.

29.      Since at least as early as 1915, SOPUS and its authorized licensees in the oil change business and distributors have used the mark PENNZOIL and the PENNZOIL logo in connection with the sale and promotion of lubricants and other petroleum-related products.  The PENNZOIL logo incorporates "PENNZOIL" in black letters over a red "Liberty Bell" design on a yellow background, sometimes presented within an oval design.  Over the years, the yellow, red and black color scheme has been repeated in SOPUS's trade dress, advertising and promotion for its PENNZOIL products and services.

30.      As a result of its continuous usage of the PENNZOIL mark, logos, and trade dress, SOPUS has acquired common law trademark rights in these marks.

31.      In addition to its extensive common-law rights, SOPUS owns federal trademark registrations for its marks, including those shown in the chart below:

| MARK | REG. NO.  /<br>REG. DATE | GOODS/SERVICES |
|---|---|---|
| PENNZOIL | 719,148<br>Aug. 1, 1961 | Lubricants (IC 4) |
| PENNZOIL 10 MINUTE OIL CHANGE | 1,562,593<br>Oct. 24, 1989 | Automotive lube center services (IC 37) |

| MARK | REG. NO. / REG. DATE | GOODS/SERVICES |
|---|---|---|
|  | 2,175,045 Jul. 21, 1998 | Motor oil; automotive, industrial and general purpose greases and lubricants; automatic transmission fluids (IC 4) Clothing, namely, T-shirts, sweatshirts, hats, jackets, sweaters, tank shirts, sport shirts, neckties and children's clothing, namely, sleepwear, T-shirts, jackets and sweatshirts (IC 25) Automobile service station services (IC 37) |
|  | 2,175,082 Jul. 21, 1998 | Motor oil; automotive, industrial and general purpose greases and lubricants; automatic transmission fluids (IC 4) Clothing, namely, T-shirts, sweatshirts, hats, jackets, sweaters, tank shirts, sport shirts, neckties and children's clothing, namely, sleepwear, T-shirts, jackets and sweatshirts (IC 25) Automobile service station services (IC 37) |
| NOT JUST OIL, PENNZOIL | 3,030,102 Dec. 13, 2005 | Motor oil, general purpose greases, and gear lubricants for land and marine vehicles (IC 4) |
|  | 719,150 Aug. 1, 1961 | Motor fuel oils, lubricant oils and greases (IC 4) |

32.     The above registrations are valid, enforceable, subsisting, and incontestable under 15 U.S.C. § 1065.  Copies of the certificates of registration for the above registrations are attached as EXHIBIT B.  The PENNZOIL marks described above and the yellow, red and black color scheme are collectively referred to herein as the "PENNZOIL Marks."

33.     PENNZOIL-branded products are available for purchase and installation at many authorized Jiffy Lube franchise locations throughout the United States, including a large number in Florida.

34.     The use of the PENNZOIL Marks by JLI franchisees who have entered into a Product Supply Agreement with SOPUS is under license from SOPUS.  SOPUS permits its distributors and JLI franchisees to purchase and use signage with the PENNZOIL Marks for the purpose of communicating to the public that they are authorized oil-change centers offering genuine PENNZOIL products.

35.     Over the years, SOPUS has invested great effort and resources in advertising and promoting the PENNZOIL Marks throughout the United States, including the state of Florida.

36.     The PENNZOIL Marks are inherently distinctive, serving to identify and indicate the source and quality of SOPUS's products and services to the consuming public, and to distinguish its products and services from those of other manufacturers and retailers.

37.     Additionally, as a result of SOPUS's extensive use and promotion of the PENNZOIL Marks, the PENNZOIL Marks have become distinctive and famous to designate SOPUS, and are well-known and widely recognized by consumers.  SOPUS has developed valuable goodwill in the famous PENNZOIL Marks.

**C.     DEFENDANTS' UNAUTHORIZED USE OF THE JIFFY LUBE AND PENNZOIL MARKS**

38.     On information and belief, Defendants Sebring, AASS, Zia Khan, and Zubin Khan (collectively, "Defendants") own and are operating an oil change service center using the JIFFY LUBE Marks and the PENNZOIL Marks at 991 U.S.  HWY 27 N, Sebring, Florida 33870 (the "Infringing Service Center").

39.     Defendants' use of the JIFFY LUBE Marks and the PENNZOIL Marks at the Infringing Service Center is unauthorized.

40.     The Infringing Service Center was previously owned and operated by one of JLI's franchisees, the Mori' Family, LLC ("the Mori' Family").

41.     The Mori' Family originally signed and entered into a franchise agreement with JLI dated November 29, 2021 (the "Franchise Agreement"), which authorized the Mori' Family to operate Jiffy Lube Store No. 4131 at the same location as the now Infringing Service Center. A copy of the Franchise Agreement with JLI is attached as EXHIBIT C.

42.     Under the terms of the Franchise Agreement, the Mori' Family also signed and entered into a product supply agreement with SOPUS dated November 29, 2021 in which the Mori' Family agreed to purchase PENNZOIL products from SOPUS for use at Store No. 4131. Excerpts from the product supply agreement with SOPUS are attached as EXHIBIT D.

43.     On September 16, 2022, Ray Morirahimi ("Mori"), one of the owners of the Mori' Family, spoke with one of JLI's franchise area managers, Konrad Maliska, about selling Store No. 4131. JLI District Manager Raymond White and JLI Territory Manager Ronald Feldman also were on the call.

44.     Later that same day, after their call, Mr. Maliska emailed Ray Mori' and his father, Alireza Morirahimi ("Al Mori"), reminding them that Section 10 of The Mori' Family's franchise agreement with JLI prohibited the sale of Store No. 4131 without JLI's consent. Mr. Maliska also told Ray and Al Mori' that JLI did not consent to the closure of the Infringing Service Center. A copy of this email is attached as EXHIBIT E.

45.     In late September 2023, Al Mori' communicated to Mr. White, Mr. Maliska, and Mr. Feldman that the Mori' Family had made arrangements to try to sell the business at Store No. 4131.

46.     On October 14, 2023, AASS submitted a franchise application signed by Zubin Khan to JLI seeking approval to become an authorized Jiffy Lube franchisee.

47.     On October 27, 2023, JLI's Contracts & Business Assurance Manager Sonja Roberts sent the letter attached as EXHIBIT F to the Mori' Family, telling them JLI did not consent to the Mori' Family's sale of the Store No. 4131 for several reasons, including the fact that a domestic background check could not be conducted on the prospective buyers.

48.     On October 27, 2023, Larry Dudek, the Franchise Sales & Network Manager for JLI, emailed Zubin Khan rejecting AASS' application to become a Jiffy Lube franchisee. A copy of this email correspondence is attached as EXHIBIT G.

49.     Despite JLI's rejection of both the Mori' Family's request to sell the Store No. 4131 to Defendants and Defendants' request to become a Jiffy Lube franchisee, on information and belief, the Mori' Family proceeded to sell the Infringing Service Center to Defendants sometime in December 2023.

50.     Under the terms of its franchise agreement with JLI, the Mori' Family is required to pay monthly royalties. JLI last received a royalty payment from the Mori' Family on December 6, 2023.

51.     On January 11, 2024, Territory Manager for JLI, Ronald Feldman, and District Manager for JLI, Raymond White, visited the Infringing Service Center to conduct an audit of the premises. The manager on duty at the Infringing Service Center told Mr. Feldman and Mr. White that the business had been sold to Defendants.

52.     During their inspection and conversation with the onsite manager, the JLI managers learned that Defendants were no longer using JLI's GROW POS system to process sales transactions,  as would be required by JLI's Policies and Procedures Manual.

53.     Despite the fact that the Infringing Service Center continued to present itself as a Jiffy Lube service center, the JLI managers did not find Pennzoil products in the bulk tanks on the premises, as an authorized franchisee would have been required to acquire and use in performing oil changes.  Instead, they were told by one of the technicians onsite that they had been using STP motor oil purchased from AutoZone for oil change services.

54.     Following this visit to the Infringing Service Center, Mr. White called and spoke with Ray Mori', who confirmed that he had sold the Infringing Service Center to Defendants.

55.     While visiting the Infringing Service Center, the JLI managers confirmed that the Defendants continue to display exterior signage prominently bearing the JIFFY LUBE Marks and the PENNZOIL Marks.  The Infringing Service Center has a standing sign located immediately outside of the building near the street featuring the JIFFY LUBE logo on the Jiffy Lube Red background.  The Infringing Service Center itself features multiple large signs on the front and sides of the building façade showing the JIFFY LUBE logos.  Moreover, JLI's proprietary color scheme remains intact.  One of the large signs on the building façade still shows the yellow-and-red PENNZOIL logo, and the drive-in car port still displays two upright yellow signs featuring the PENNZOIL logo and the slogan "Not just oil, Pennzoil."  Photographs of Defendants' exterior signage and building façade are attached as EXHIBIT H.

56.     JLI sent a cease and desist letter through its counsel to Defendants on January 15, 2024, demanding that Defendants cease use of the JIFFY LUBE Marks.  A copy of this letter is attached as EXHIBIT I.  This letter requested that the Defendants provide their signed agreement

to comply with JLI's demands by Wednesday, January 17th, and remove or temporarily cover all physical signs and billboards by Friday January 19th, with all signs being permanently removed one week later.  Although Defendants acknowledged this letter, they have failed to comply with any of JLI's requested actions.

57.     On January 15, 2024, JLI also sent a letter to the Mori' Family terminating their franchise agreement for breach of the agreement.  A copy of this termination letter is attached as EXHIBIT J.

58.     Defendants continue to conduct business at the Infringing Service Center under signs and trade dress bearing the JIFFY LUBE Marks and the PENNZOIL Marks.

59.     Defendants are not authorized Jiffy Lube franchisees, and JLI and SOPUS have not authorized Defendants to use the JIFFY LUBE Marks or the PENNZOIL Marks in connection with their business.

60.     Defendants are falsely holding out their business at the Infringing Service Center as if it is an authorized Jiffy Lube franchisee, but they are not complying with JLI's policies and procedures that all franchisees are required to follow when operating a Jiffy Lube franchise store.

61.     Defendants are misrepresenting themselves as a Jiffy Lube franchisee and as providing PENNZOIL products.

62.     Defendants have engaged in a deliberate course of conduct to deceive consumers into believing that the motor oil and lubrication services offered by Defendants emanate from, or are authorized, connected or affiliated with, JLI and SOPUS.  Defendants continue to falsely represent that they are a JIFFY LUBE service center and use PENNZOIL products in order to trade on the Plaintiffs' famous reputation and substantial goodwill, and to injure Plaintiffs and their

authorized franchisees and service providers.  Defendants' unauthorized use of the JIFFY LUBE Marks and the PENNZOIL Marks began long after these marks became famous.

63.     Defendants Zubin Khan and Zia Khan have actively participated in the above-described violations of the JIFFY LUBE Marks and the pennzoPENNZOIL Marks.

**D.     EFFECT OF DEFENDANTS' ACTIVITIES ON JLI, SOPUS AND THE CONSUMING PUBLIC**

64.     Defendants' unauthorized use of the JIFFY LUBE Marks and the PENNZOIL Marks in this manner is likely to cause confusion, to cause mistake, and to deceive customers and potential customers as to the  affiliation, connection, sponsorship or association of Defendants with JLI and SOPUS, or as to the origin, affiliation, sponsorship, or approval of Defendants' products or services by JLI and SOPUS.

65.     Defendants' unauthorized use of the JIFFY LUBE Marks and the PENNZOIL Marks falsely indicates to the purchasing public that Defendants, their business, and their products or services are affiliated, connected, or associated with JLI and SOPUS, or are sponsored, endorsed, or approved by JLI and SOPUS, or are in some manner related to JLI and SOPUS or their products or services, when that is not true.

66.     Defendants' unauthorized use of the JIFFY LUBE Marks and the PENNZOIL Marks falsely designates the origin of Defendants' products and services, and falsely or misleadingly describes and misrepresents facts with respect to Defendants and their products and services.

67.     Defendants' unauthorized use of the JIFFY LUBE Marks and the PENNZOIL Marks is likely to cause dilution of the distinctive quality of the JIFFY LUBE Marks and the PENNZOIL Marks and is already causing such dilution.

68.     Defendants' unauthorized use of the JIFFY LUBE Marks and the PENNZOIL Marks enables Defendants to trade on and receive the benefit and goodwill built up at great labor and expense over many years by JLI and SOPUS in the reputation of the JIFFY LUBE Marks and the PENNZOIL Marks.

69.     Defendants' unauthorized use of the JIFFY LUBE Marks and the PENNZOIL Marks in this manner enables Defendants to pass off products and services on the unsuspecting public as those of JLI and SOPUS when they are not JLI or SOPUS products or services.

70.     Defendants' unauthorized use of the PENNZOIL Marks deceives consumers into believing that the motor oil products used by Defendants are genuine SOPUS products.

71.     Defendants' unauthorized use of the JIFFY LUBE Marks in this manner deceives consumers into believing that the oil-change services provided by Defendants are genuine JLI-authorized oil-change services when that is not the case.

72.     Defendants' unauthorized use of the JIFFY LUBE Marks and the PENNZOIL Marks removes from JLI and SOPUS their respective ability to control the nature and quality of the products and services provided under the JIFFY LUBE Marks and the PENNZOIL Marks, and places the valuable reputation and goodwill of JLI and SOPUS in the unfettered control of Defendants.

73.     As a result of Defendants' unauthorized use of the JIFFY LUBE Marks and the PENNZOIL Marks, Defendants are being unjustly enriched at JLI's and SOPUS's expense.

74.     Unless this infringement of Plaintiffs' trademarks, these unfair and deceptive trade practices, and acts of unfair competition by Defendants are enjoined by this Court, these practices and acts will continue, and will continue to cause irreparable injury to JLI and SOPUS and to the public, for which there is no adequate remedy at law.

E.      **WILLFUL NATURE OF DEFENDANTS' ACTIVITIES**

75.     Defendants' activities complained of herein have been malicious, fraudulent, deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of JLI's and SOPUS's respective rights.  In view of the egregious nature of Defendants' actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

### COUNT I:  FEDERAL TRADEMARK INFRINGEMENT

76.     Plaintiffs repeat the above allegations as if fully set forth herein.

77.     The acts of Defendants complained of herein constitute infringement of JLI's and SOPUS's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

### COUNT II:  FEDERAL UNFAIR COMPETITION

78.     Plaintiffs repeat the above allegations as if fully set forth herein

79.     The acts of Defendants complained of herein constitute unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

### COUNT III:  FEDERAL TRADEMARK DILUTION

80.     Plaintiffs repeat the above allegations as if fully set forth herein.

81.     The acts of Defendants complained of herein constitute dilution of JLI's and SOPUS's famous trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

82.     Defendants willfully intended to trade on the Plaintiffs' reputation and to cause such dilution.

### COUNT IV:  FEDERAL FALSE ADVERTISING

83.     Plaintiffs repeat the above allegations as if fully set forth herein.

84.     The acts of Defendants complained of herein constitute false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

**COUNT V:  FLORIDA COMMON LAW**
**UNFAIR COMPETITION AND PASSING OFF**

85.     Plaintiffs repeat the above allegations as if fully set forth herein.

86.     The acts of Defendants complained of herein constitute unfair competition and passing off in violation of the common law of Florida.

**COUNT VI:  UNJUST ENRICHMENT**

87.     Plaintiffs repeat the above allegations as if fully set forth herein.

88.     The acts of Defendants complained of herein constitute unjust enrichment of Defendants at Plaintiffs' expense.

WHEREFORE, Plaintiffs pray that:

a)      Defendants, Defendants' agents, servants, employees, attorneys, and all those persons in active concert or participation with them, be permanently enjoined from using the JIFFY LUBE Marks, the PENNZOIL Marks, any copy or colorable imitation of the JIFFY LUBE Marks and the PENNZOIL Marks, or any other mark confusingly similar thereto or likely to dilute the distinctive quality of the JIFFY LUBE Marks and the PENNZOIL Marks or otherwise simulate Plaintiffs' trade identity, including the use of yellow logos or signs and a maroon or red color scheme in their signage or building facades;

b)      Defendants be ordered to deliver to JLI or SOPUS, as the case may be, any and all signage and other advertising or promotional materials in the possession of Defendants or under their control bearing any of the JIFFY LUBE Marks or the PENNZOIL Marks or variations thereof;

c)      Defendants be ordered to file with this Court and to serve upon Plaintiffs, within 30 days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

d)      Plaintiffs recover all damages they have sustained as a result of Defendants' activities and that said damages be trebled;

e)      An accounting be directed to determine Defendants' profits resulting from Defendants' illegal activities, and that such profits be paid over to Plaintiffs and increased as the Court finds to be just under the circumstances of this case;

f)      Plaintiffs recover their reasonable attorneys' fees;

g)      Plaintiffs recover their costs of this action and prejudgment and post-judgment interest; and

h)      Plaintiffs recover such other relief as the Court may deem appropriate.

Dated:  January 29, 2024                         Respectfully submitted,

                                                 /s/  Lee Stapleton
                                                 Lee Stapleton (FBN 356778)
                                                 lstapleton@carltonfields.com
                                                 James S. Czodli (FBN 123523)
                                                 jczodli@carltonfields.com
                                                 CARLTON FIELDS, P.A.
                                                 2 MiamiCentral, Suite 1200
                                                 700 NW 1st Avenue
                                                 Miami, Florida 33136
                                                 Telephone:  (305) 530-0050
                                                 Facsimile:  (305) 530-0055

Eliot Turner*
eliot.turner@nortonrosefulbright.com
Andrea Shannon*
andrea.shannon@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-5203
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

*Pro Hac Vice Applications Pending

*Attorneys for Plaintiffs Jiffy Lube International,
Inc.  and Pennzoil-Quaker State Company*